NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT J. MCCAFFERTY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THERMO FISHER SCIENTIFIC,<br><br>　　　　　　Defendants. | Civil Action No.: 11-1146 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge

　　　This matter comes before the Court on Defendant Thermo Fisher Scientific's partial motion to dismiss all of Plaintiff's claims with the exception of Plaintiff's Age Discrimination in Employment Act ("ADEA") claim premised upon his termination.  The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's motion is granted in part and denied in part.

I.　　BACKGROUND

　　　Plaintiff Robert McCafferty ("Plaintiff" or "McCafferty") is currently 69 years old.  On October 21, 2011, Plaintiff began working at Nalge Nunc International as a High Throughout Specialist ("HTS").  Complaint ("Compl.") ¶ 8.  In April 2003, Plaintiff's position was eliminated and he obtained a sales position wherein he reported to Senior Territory Manager Keith Katzgrau.  In that position, Mr. McCafferty was responsible for the sales of Nalge Nunc's

major accounts in Northern New Jersey, and its small accounts in Upstate New York. ( Id. ¶ 9.)

On or about August 6, 2004, Defendant Thermo Fisher Scientific ("Defendant" or "TFS") acquired what had been Nalge Nunc International. After the acquisition, Mr. McCafferty continued to work as a sales associate. Mr. Katzgrau remained Mr. McCafferty's supervisor.

In October 2004, Mr. Katzgrau removed Mr. McCafferty from his major accounts in Northern New Jersey and his smaller accounts in Upstate New York, and instead assigned him to "minor accounts in Central and Southern New Jersey." ( Id. ¶ 11.) Mr. Katzgrau assigned Mr. McCafferty's former accounts to another salesperson, Ben Hayes. ( Id. ) According to Plaintiff, Mr. Katzgrau did not inform Mr. McCafferty that he had been removed from his original accounts; rather, Mr. McCafferty learned of the switch from his distributors and competitors. (Id. ¶ 12.) When Mr. McCafferty approached Mr. Katzgrau about his decision to assign Ben Hayes to Plaintiff's former accounts, Mr. Katzgrau allegedly told Plaintiff that he had chosen Mr. Hayes because Mr. Hayes was "young, handsome, well-dressed, energetic, and sports-minded, and [Defendant] feels that he will be a future asset to the company." (Id. ¶ 13). In April 2006, Mr. Hayes voluntarily left his employment with Defendant. Plaintiff was not reassigned to his former major accounts. ( Id. ¶ 15.)

On or about June or July 2007, Mr. McCafferty claims that Defendant posted a job advertisement for his position as representative of the Central and South Jersey territories "as if his position were vacant." ( Id. ¶ 16.) On August 24, 2007, Plaintiff asked Mr. Katzgrau about the advertisement and Mr. Katzgrau replied that Defendant was seeking a replacement for Mr. Hayes. Mr. McCafferty then asked to be reassigned to Mr. Hayes's vacant position and Mr. Katzgrau declined to transfer Plaintiff back to his former accounts. According to Plaintiff, Mr.

Katzgrau also expressed concerns about Mr. McCafferty "driving long distances" to his current accounts in Central and Southern New Jersey. (Id. ¶ 19.) Mr. Katzgrau suggested that Plaintiff should be assigned to "minor accounts" in Bergen County, New Jersey, and Upstate New York. (Id. ¶ 20.) Plaintiff claims that these territories had historically produced lower revenue, were much farther away from his home than either his former or then current territories, and he believed that this position would likely be eliminated in the future. (Id. ¶¶ 20-21.) Plaintiff objected to the reassignment and told Mr. Katzgrau that he believed it to be an act of age discrimination. (Id. ¶ 22.)

In September 2007, Mr. McCafferty met with Mr. Katzgrau to discuss, *inter alia*, his territories, his 2006 performance review and his quarterly commission bonus for the second quarter of 2007. Even though the position remained vacant, according to Plaintiff, Mr. Katzgrau again refused to reassign him to his original territories. (Id. ¶ 24.) Mr. Katzgrau also refused to correct a miscalculation in Mr. McCafferty's sales figures for 2006, which affected Mr. McCafferty's commission. Mr. Katzgrau did not explain his calculations to Plaintiff, but according to Plaintiff, promised to give him a $5,500 bonus for the second quarter of 2007. Mr. McCafferty never received this bonus. (Id. ¶ 26.)

In late 2007, Defendant hired Karen Lew, a female in her 30s to fill Mr Hayes's vacant position. (Id. ¶ 27.) After Defendant hired Ms. Lew, Mr. Katzgrau transferred some of Mr. McCafferty's accounts to her, leaving Plaintiff with very few accounts. Again, Mr. Katzgrau did not inform Mr. McCafferty that he was transferring several of Plaintiff's accounts to Ms. Lew. (Id. ¶   Mr. McCafferty again told Mr. Katzgrau that his actions constituted age discrimination. Defendant never investigated Mr. McCafferty's allegations of age discrimination, nor took any

remedial actions. (Id. ¶ 30.)

In January 2008, Defendant decreased Mr. McCafferty's vacation from 4 weeks to 3 weeks per year. (Id. ¶ 31.) On August 5, 2008, Defendant informed Mr. McCafferty that it was terminating him effective August 19, 2008.

On or about December 4, 2008, Mr. McCafferty submitted a charge of discrimination to the United States Equal Employment Opportunity Commission ("EEOC"), alleging that he was subject to discrimination due to his age in violation of the ADEA. (Id. ¶ 33.) On February 24, 2011, the EEOC issued a "Notice of a Right to Sue" to Plaintiff. (Id. ¶ 34.)

## II.     LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element[s]." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d. Cir. 2008) (quoting Twombly, 550 U.S. at 556).

III.     ANALYSIS

    A.     ADEA Claims

The ADEA requires that a complainant exhaust his administrative remedies prior to filing a complaint in federal court.  See 29 U.S.C. § 626(d)(1) (requiring a complainant to file a charge with the EEOC prior to commencing an action in district court against that party).  In order to exhaust administrative remedies, an individual must file a charge "within 300 days after the alleged unlawful practice occurred."  29 U.S.C. §§ 626(d)(1)(B), 633(b).  However, under the continuing violation doctrine, a "plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period."  West Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995).  The continuing violation doctrine applies to harassment claims because "the cumulative effect of a series of discriminatory or harassing events represents a single cause of action."  Muha v. Rutgers State Univ. of New Jersey, 2009 WL 689738 *5 (D.N.J. March 11, 2009).

Defendant concedes that Plaintiff's wrongful termination claim is properly before the Court as Plaintiff filed a charge with the EEOC less than four months after being fired.  However, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his remaining ADEA claims because all of Plaintiff's other allegations occurred more than 300 days in advance of his EEOC filing.  This Court disagrees.

Defendant is correct that, notwithstanding his termination, Plaintiff's most recent allegation of age discrimination occurred in January 2008, more than 300 days before December 4, 2008 — the date of Plaintiff's EEOC filing.  However, Plaintiff's termination on August 19,

2008 constitutes another event in a series of ongoing discriminatory conduct, which serves to revive Plaintiff's otherwise untimely claims. Indeed, if a plaintiff has filed a charge of discrimination "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Mikula v. Allegheny County of PA, 583 F.3d 181, 186 n.3 (3d Cir. 2009). As the Supreme Court has stated, the very nature of a "hostile work environment involves repeated conduct. The 'unlawful employment practice' cannot be said to occur on any particular day. It occurs over a series of days or perhaps years . . ." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).

Taking all of Plaintiff's allegations as true, since Plaintiff's removal from his major accounts in 2004, Plaintiff was repeatedly subjected to a pattern and practice of discriminatory conduct by Mr. Katzgrau. While each of Mr. Katzgrau's actions may not be individually actionable, it is their cumulative effect that constitutes harassment. This case is distinguishable from cases such as Snyder v. Baxter Healthcare, Inc., wherein the Court held that the employee failed to allege *any* specific act of discrimination that occurred within the 300-day administrative limitations period. 393 Fed. Appx. 905, 2010 WL 3549425 (3d Cir. Sept. 14, 2010). Rather in this case, Defendant's most egregious act in a long pattern of discrimination occurred within the 300-day period. It is well-settled, that when an individual experiences a continual pattern of tortious conduct, the statute of limitations runs from the most recent instance of wrongful conduct; and not, from each individual act.

Although, "the continuing violation doctrine does not 'provide a means for relieving plaintiff from their duty to exercise reasonable diligence in pursuing their claims[;]'" that is not

at issue here.  Mandel v. M & Q Packaging Corp., 2011 WL 3031265 *7 (M. D. Pa. July 25, 2011) (citing Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).  In this case, Plaintiff filed a charge with the EEOC less than four months after being terminated; hardly an unreasonable amount of time to pursue a claim.  Accordingly, the continuing violation doctrine applies, and the entirety of Mr. McCafferty's ADEA claim is timely.

   **B.**  **New Jersey Law Against Discrimination ("LAD") Claims**

Defendant also moves to dismiss Plaintiff's LAD claims for failure to state a claim upon which relief may be granted.  In order to survive a motion to dismiss, a plaintiff's complaint must "state a claim to relief that is plausible on its face."  Iqbal, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Twombly, 550 U.S. at 555.

In Counts II and III of his Complaint, Plaintiff alleges Defendant is liable for harassment and retaliation under the LAD for "false and negative statements" made by Mr. Katzgrau to other employees of Defendant and to "at least two third parties" after Plaintiff's termination.  Plaintiff does not detail what Mr. Katzgrau allegedly said, when he said it, or how he came to know of Mr. Katzgrau's statements.  Rather, Plaintiff's complaint recites mere legal conclusions.  Without specifics, the Court cannot determine if, after terminating Plaintiff, Mr. Katzgrau performed any act that was either harassing and/or retaliatory.  Under the standard enumerated in Iqbal, a complaint must set forth sufficient direct or inferential allegations to demonstrate the material elements necessary for recovery under the relevant legal theory.  Plaintiff's complaint falls short of this standard.  Thus, Plaintiff's LAD claims are dismissed.

DATED: August 5, 2011

                                                  s/ Jose L. Linares
                                                  JOSE L. LINARES
                                                  U.S. DISTRICT JUDGE